Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4254 | **DATE** | 3/25/2002 |
| **CASE TITLE** | Drown vs. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Both parties' motions for summary judgment (6, 11) are denied, and Drown's motion in the alternative for remand is granted. Judgment is entered remanding plaintiff's claim to the Social Security Administration.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | date docketed | | |
| ✓ | Docketing to mail notices. | | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| OR | courtroom deputy's initials | | date mailed notice | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL DROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 01 C 4254 |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Michael Drown, who suffers from degenerative disc disease, appeals from a denial of disability insurance benefits by the Social Security Administration. Drown subsequently filed this lawsuit, seeking review of the SSA's decision and an award of benefits. Both Drown and the SSA have moved for summary judgment.

## Facts

Drown applied for disability insurance benefits under the Social Security Act on April 20, 1998, alleging that he became disabled on September 8, 1997 – the last day he worked. In May 1995, Drown was diagnosed with mild degenerative disc and joint disease in his spine. This condition worsened over the years, and a January 1997 cervical myelogram showed disc herniation. Accordingly, on January 29, 1997, Drown had an anterior cervical microdiscectomy; thereafter, he underwent physical therapy and resumed work on May 12, 1997.

Drown's condition stabilized after this surgery until, in late July 1997, he hit his head on a ledge. As a result, he experienced increasing neck pain and limited neck mobility. He again participated in physical therapy in August and September 1997, and continued to wear a cervical collar recommended by his doctor, Gary Skaletsky. On September 8, 1997, Dr. Skaletsky noted that Drown's symptoms had not improved. A subsequent myelogram revealed additional disc problems in Drown's spine. He underwent another microdiscectomy and spinal fusion in October 1997. Drown has not returned to work since September 1997, and he continues to experience pain and reduced neck motion to varying degrees. He has continued to participate in physical therapy at various times, has undergone pain injections, and regularly visits Dr. Skaletsky for consultation and pain control. Drown has taken, and continues to take, pain medications which result in drowsiness and occasional confusion.

Drown's initial application for disability insurance benefits was denied, as was his request for reconsideration. Drown then filed a timely request for a hearing before an Administrative Law Judge. ALJ John Mondi held a hearing in Drown's case on January 5, 1999 during which Drown, his wife, and a vocational expert testified. On August 31, 1999, ALJ Mondi issued a decision denying Drown's claim. The ALJ concluded that Drown's impairments, "while severe, do not, considered singly or in combination, meet or equal in severity the requirements established in the Listing of Impairments in Appendix 1, subpart P, Regulations No. 4. Moreover, the record establishes that the claimant's impairments were not disabling for a continuous 12 month period. Within 12 months after his alleged onset date, the claimant had regained the residual functional capacity to perform a significant range of unskilled light work." Record at 14. The ALJ's decision became a final agency decision on April 12, 2001.

**Discussion**

Judicial review of the ALJ's decision is limited to determining whether the ALJ applied the correct legal standards in reaching a decision and whether there is substantial evidence in the record to support the findings. 42 U.S.C. §405(g); *see also Scivally v. Sullivan*, 966 F.2d 1070, 1075 (7th Cir. 1992). The "substantial evidence" standard "requires no more than 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995)). Though this standard of review is deferential, the Court must not act as an uncritical rubber stamp of the ALJ's decision. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). That said, the Court may reverse the ALJ's decision "only if the evidence 'compels' reversal, not merely because the evidence supports a contrary decision." *Betancourt v. Apfel*, 23 F. Supp. 2d 875, 880 (N.D. Ill. 1998) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)).

To be eligible for disability insurance benefits, Drown must be unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905 (1998). In determining whether Drown suffered from a disability, the ALJ conducted the standard five-step inquiry: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the impairment is severe (*i.e.*, significantly limits the claimant's physical or mental ability to basic work activities); (3) whether the impairments meet or equal an impairment listed in 20 C.F.R. § 404, Sub. P, Appendix 1; (4) whether the claimant can perform his past work; and (5) whether

the claimant's impairments prevent him from doing other work in the national economy. *See, e.g., Clifford*, 227 F.3d at 868. If Drown's impairments do not meet or equal a listed impairment, but are severe enough that he is prevented from doing his past work, the burden falls on the SSA to show that there are jobs available for which Drown is qualified. *See Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). If the SSA fails to meet this burden, Drown is entitled to benefits.

The ALJ concluded that Drown had not engaged in substantial gainful activity since September 8, 1997 and that his impairments are severe. The ALJ further concluded that his impairments did not "meet or equal" a listed impairment, and that although Drown could not perform his past work, he had the capacity to perform a "significant range of unskilled light work" in the national economy. Record at 14. In making that determination, the ALJ found that Drown's testimony regarding his pain and abilities was "not credible" and denied Drown's claim. Drown argues that the ALJ failed to apply the correct legal standards in reaching a decision because he did not properly outline his reasons for concluding that Drown's testimony was not credible and failed to explain his rejection of evidence that Drown had been or could be expected to be impaired for a duration exceeding 12 months.

With respect to the first point, the SSA correctly argues that we must affirm an ALJ's credibility determination unless the appellant demonstrates that it is patently wrong. *See, e.g., Powers*, 207 F.3d at 435. In order for a court to be able to review a credibility determination, however, the ALJ must outline fully the basis for his determination. The reasons must be supported by the record and must be specific enough to show the weight the ALJ gave to the claimant's testimony. *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001); *see also* SSA Ruling 96-7p, 1996 WL 374186, *2 ("It is not sufficient for the adjudicator to make a single,

conclusory statement that ... the [individual's] allegations are (or are not) credible ... The determination ... must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear ... the weight the adjudicator gave to the individual's statement").

The Court finds that the ALJ failed to support sufficiently his finding that Drown's testimony was not credible and that Drown could perform numerous jobs in the national economy. This credibility determination was particularly significant, because the vocational expert, Julie Bose, testified that if the testimony provided by Drown and his wife was believed, his impairments would rule out any type of work activity. She further testified that the "factors most relevant in ruling out work activity would be the lack of even minimal motion of the neck, the lack of ability to use the left upper extremity even for simple grasping activities combined with the drowsiness which causes the claimant to sleep throughout the day for substantial periods of time." Record at 332. In light of the expert's testimony, to deny Drown's claim for benefits, the ALJ would have had to reject as lacking in credibility Drown's testimony on those three factors, for Drown's testimony supported each of them.

Even aside from Drown's testimony, these factors were supported by medical evidence in the record. For example, Dr. Skaletsky's January, 1999 evaluation of Drown indicates that Drown cannot use his left hand for repetitive action such as "simple grasping;" "pushing and pulling of controls;" or "fine manipulation" (Record at 263), and that his pain medication causes "drowsiness, lethargy, [and] dizziness" (Record at 264). The record also contains ample evidence that Drown repeatedly sought medical treatment for pain; took pain medications; and participated in physical therapy – all of which might bolster his credibility

-5-

regarding his limitations. The ALJ did not explain his implicit rejection of this medical evidence. It is true that the ALJ need not address every piece of evidence in his conclusion. *See Clifford*, 227 F.3d at 872. But we cannot properly evaluate the credibility determination, on which the ALJ's denial of benefits turned, without knowing why he apparently rejected the medical evidence that supported Drown's testimony on these critical points. For this reason, the case must be remanded for a reevaluation of Drown's complaints with due regard for the full range of medical evidence.[1]

We also address the ALJ's determination that even if Drown was "disabled" for some period, he did not suffer from a disability for the requisite 12 month period. The law is clear that to obtain benefits, Drown must suffer from a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905 (1998).

This conclusion suffers from the same deficiencies as the credibility determination. Though the ALJ referred to Dr. Skaletsky's January 1999 evaluation of Drown, he stated only that the doctor's examination "showed no atrophy" and did not indicate a

---

[1] The ALJ's decision also suggests that he did not believe Drown's testimony regarding his impairments because Drown could perform certain household tasks (*e.g.*, washing dishes) and was seeking work. But the case law makes clear that "minimal daily activities ... do not establish that a person is capable of engaging in substantial physical activity." *Clifford*, 227 F.3d at 872; *see also Zurawski*, 245 F.3d at 887 (claimant's ability to perform limited household tasks does not necessarily undermine a claim of disabling pain). The testimony of Drown and his wife suggests that his ability to actually perform household tasks is extremely limited. And testimony from the vocational expert, Drown and Drown's wife further indicated that, although Drown at times sought work, his ability to perform and ultimately keep a job was at best questionable. *See, e.g.*, Record at 324-26, 333. The ALJ should address this point more completely on remand.

"disabling impairment." But Dr. Skaletsky also indicated that Drown could not use his left hand at all for repetitive activity; that Drown's medications cause drowsiness, lethargy, and dizziness; and that there was evidence of "diffuse weakness and fatigability" as well as diminished sensation in his upper left extremity.

In reaching his conclusion, the ALJ did not address these points, which seem, on the surface at least, to be more significant than the points the ALJ referenced from the January 1999 evaluation. Though "a written evaluation of each piece of evidence or testimony is not required ... neither may the ALJ select and discuss only that evidence that favors his ultimate conclusion." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994) (citations omitted). The evidence from both Drown and Dr. Skaletsky could lead to the conclusion that Drown's condition is ongoing and could be expected to continue for some time (*i.e.* for longer than 12 months) without abatement. The ALJ addressed only one aspect of the January 1999 evaluation without dealing with the other evidence that pointed to ongoing medical problems. The ALJ's failure to articulate fully his reasons for discounting the medical evidence that Drown's condition has *not* been resolved is an additional reason why a remand is needed.

## Conclusion

Both parties' motions for summary judgment [docket items 6 & 11] are denied, and Drown's motion in the alternative for remand is granted. The Clerk is directed to enter judgment remanding plaintiff's claim to the Social Security Administration.

Date: March 25, 2002

MATTHEW F. KENNELLY
United States District Judge